No. 30 July 2, 2026 383

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Adverse Party,*

*v.*

DOUGLAS C. WRIGHT,
*Defendant-Relator.*

(CC 23CR33399) (SC S070878)

En Banc

Original proceeding in mandamus.*

Argued and submitted November 19, 2024.

Zachary J. Stern, Zachary J. Stern, P.C., Salem, argued the cause and filed the briefs for defendant-relator.

Paul L. Smith, Deputy Solicitor General, Salem, argued the cause and filed the answering brief for plaintiff-adverse party. Also on the answering brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General. Paul L. Smith, Solicitor General, filed the supplemental brief for plaintiff-adverse party. Also on the supplemental brief was Dan Rayfield, Attorney General.

Rosalind M. Lee, Rosalind Manson Lee LLC, Eugene, filed the brief for *amicus curiae* Oregon Criminal Defense Lawyers Association. Also on the brief were Amy Potter and Daniel C. Silberman.

DUNCAN, J.

The alternative writ of mandamus is dismissed.

_____
 * On petition for peremptory writ of mandamus from an order of the Linn County Circuit Court, Thomas McHill, Judge.

## DUNCAN, J.

This mandamus case arises out of a criminal case in which relator is the defendant. In that case, relator moved to compel the state to provide him copies of discovery materials without cost. The circuit court denied that motion, and relator initiated this case seeking mandamus relief, contending that (1) the state cannot charge criminal defendants for copies of discovery materials, and (2) even if it can, it cannot withhold the copies pending payment. We issued an alternative writ. However, as we will explain, relator's primary argument in this court is based on the current version of a statutory provision, ORS 135.805(2), which does not apply in his criminal case. Given that, this case does not present the primary issue identified in relator's mandamus petition. Therefore, we decline to exercise our discretion to determine whether the state may charge for copies of discovery materials and, if so, whether it may withhold those copies pending payment, and we dismiss the alternative writ.

### I.   PROCEDURAL FACTS

As mentioned, in the underlying criminal case, relator filed a motion to compel the state to provide him copies of discovery materials without cost, and the circuit court denied that motion. Relator then petitioned this court for a writ of mandamus, and we issued an alternative writ directing the circuit court either to (1) vacate its order denying relator's motion and enter an order compelling the state to provide relator discovery without cost or (2) show cause for not doing so.

After we issued the alternative writ, the state provided relator copies of the discovery materials without cost. The state then filed a motion asking the circuit court to vacate its order denying relator's motion to compel, and the circuit court granted that motion. Thereafter, the state filed a motion asking this court to dismiss this mandamus case, asserting that it was moot and that we should not exercise our discretion to adjudicate it pursuant to ORS 14.175, which provides that courts may decide certain moot cases that involve matters that are "capable of repetition" but "likely to evade judicial review in the future." Relator

objected. Although relator agreed that the case was moot, he contended that we should exercise our discretion under ORS 14.175 to adjudicate it. We denied the state's motion, and the case proceeded to briefing and oral argument. Later, we requested and received supplemental briefing from the parties regarding the applicability of the current version of ORS 135.805(2), which both parties had relied on.

## II.   ANALYSIS

In our analysis, we first address the requirements for mandamus relief and for adjudication under ORS 14.175. We then address the applicability of the current version of ORS 135.805(2).

### A.   *Mandamus*

This case is the type in which mandamus relief can be appropriate because it involves a challenge to the denial of a form of discovery—specifically, the provision of copies of discovery materials—that is intended to provide systemic benefits, the loss of which might not factor into reversible error on appeal. *See State ex rel Anderson v. Miller*, 320 Or 316, 321, 882 P2d 1109 (1994) (holding that the requirements for mandamus were satisfied where the relator was challenging a circuit court's denial of videotaped depositions, apparently "as a matter of course").

### B.   *Adjudication under ORS 14.175*

Although this case is moot, it is justiciable under ORS 14.175 because it involves a challenge to a government action that is capable of repetition but likely to evade judicial review in the future. First, the challenged action is capable of repetition because the Linn County District Attorney's Office, which prosecuted relator's criminal case, has not changed its policy of requiring payment for copies of discovery materials before providing them; consequently, the challenged action will continue.[1] Second, the challenged action is likely to evade review because the district attorney's office can render future challenges to its policy moot by providing copies of discovery materials without cost, as it did in relator's criminal case.

---

[1] *See Policies*, Linn County, https://www.linncountyor.gov/districtattorney/page/policies (last visited June 29, 2026).

The state acknowledges that the district attorney's office can do that, but the state argues that challenges to the policy will not evade review because there may be some cases in which the district attorney's office "would not elect to waive the discovery fee." We reject that argument because, even assuming there will be such cases, that possibility is insufficient to establish that challenges like relator's are not likely to evade review. *See Penn v. Board of Parole*, 365 Or 607, 613, 623, 451 P3d 589 (2019) (holding that the relator's challenge was likely to evade review even though there were a few reported cases in which similarly situated persons had brought challenges that had not gone moot).

When a case is moot but justiciable under ORS 14.175, a court may choose to adjudicate it. *Couey v. Atkins*, 357 Or 460, 522, 355 P3d 866 (2015) (explaining that ORS 14.175 "leaves it to the court to determine whether it is appropriate to adjudicate an otherwise moot case under the circumstances of each case"); *see also Penn*, 365 Or at 613 ("Courts are not *required* to decide any and every moot case that falls within the terms of ORS 14.175." (Emphasis in original.)). We decline to exercise our discretion to adjudicate this mandamus case because, as we will explain, relator's primary argument is based on the definition of "disclose" in the current version of ORS 135.805(2), which does not apply in his criminal case.

C.  *Applicability of Current Definition of "Disclose" in ORS 135.805(2)*

Relator's primary argument is that the state has a statutory obligation to provide copies of discovery materials to criminal defendants. Relator made that argument in the circuit court, citing ORS 135.815, which requires the state to "disclose" certain materials and information to defendants.[2]

---

[2] Oregon has a series of statutes that govern reciprocal discovery in criminal cases, ORS 135.805 to 135.880, which were originally enacted in 1973 as part of the Oregon Criminal Procedure Code. Or Laws 1973, ch 836, §§ 213-220. ORS 135.815 sets out the state's discovery obligations. As relevant here, ORS 135.815(1) provides that "the district attorney shall disclose [listed material and information] within the possession or control of the district attorney." Another discovery statute, ORS 135.835, imposes a similar obligation on defendants. The disclosure obligations of both the state and the defense are subject to timing requirements, set out in ORS 135.845, which provides, in part, that "[t]he obligations to disclose shall be performed as soon as practicable following the filing of an indictment or information in the circuit court or the filing of a complaint or information charging a misdemeanor or violation of a city ordinance."

The state disputed that argument, asserting that its statutory obligation is only to provide access to discovery materials, not copies of them. The circuit court agreed with the state.

In his initial briefing in this court, relator renewed his statutory argument, again citing ORS 135.815. He also cited, for the first time, ORS 135.805(2), which defines "disclose." Relator relied on the current version of ORS 135.805(2), which is the product of an amendment made in 2021. Or Laws 2021, ch 409, § 1. As relevant here, ORS 135.805(2) states that "'disclose' means to provide * * * [a] copy of the material, including but not limited to any document, photograph, report, audio recording, video recording or electronically stored information[.]"

In its initial briefing in this court, the state agreed that, under the current version of ORS 135.805(2), it is statutorily obligated to provide copies of discovery materials to defendants. But it contended that it may charge for those copies and withhold them pending payment.

Thus, in their initial briefing in this court, both parties proceeded as if the current version of ORS 135.805(2) applies in relator's criminal case. That version is the product of Senate Bill (SB) 751 (2021), which has three sections. Section 1 of SB 751 amended the definition of "disclose" in ORS 135.805(2) to its current form, which, as set out above, states that "'disclose' means to provide * * * [a] copy of the material, including but not limited to any document, photograph, report, audio recording, video recording or electronically stored information[.]" Prior to the amendment, ORS 135.805(2) stated that "'disclose' means to afford the adverse party an opportunity to inspect or copy the material." ORS 135.805(2) (2019), *amended by* Or Laws 2021, ch 409, § 1. Section 2 of SB 751 amended ORS 135.815 to expand the state's discovery obligations. Section 3 established the applicability of the preceding sections, stating, "The amendments to ORS 135.805 and 135.815 by sections 1 and 2 of this 2021 Act apply to offenses alleged to have occurred on or after the effective date of this 2021 Act."

The effective date of SB 751 was January 1, 2022. Or Laws 2021, ch 409; ORS 171.022. Relator was indicted

after that date, but each count of the indictment charged him with committing a crime before that date. Specifically, Counts 1 through 4 alleged that he committed crimes "on or between January 1, 2011 and December 31, 2013," and Count 5 alleged that he committed a crime "on or between January 1, 2009 and December 31, 2014."

Because section 3 states that SB 751's amendments apply to offenses alleged to have occurred on or after the bill's effective date and relator's indictment charges him with crimes committed before that date, we asked the parties to file supplemental briefing regarding the applicability of the current version of ORS 135.805(2), which each of them had relied on in their initial briefs.[3]

In his supplemental brief, relator argues that the current version of ORS 135.805(2) applies to his criminal case. As set out above, section 3 of SB 751 provides that the "amendments *** by sections 1 and 2 of this 2021 Act apply to offenses alleged to have occurred on or after the effective date of [the Act]." Relator reads section 3 to mean that SB 751's amendments apply to all crimes *alleged* on or after SB 751's effective date. Thus, in relator's view, the relevant date is the charging date.

The state reads section 3 differently. According to the state, the applicability of SB 751's amendments does not depend on the date that a crime is *alleged*; instead, it depends on the date that the offense is *alleged to have occurred*. Thus, according to the state, the relevant date is the alleged crime commission date.

The parties' dispute about whether the relevant date is the charging date or the alleged crime commission date presents a question of statutory interpretation, which

---

[3] Only sections 1 and 2 of SB 751 were incorporated into the Oregon Revised Statutes. Section 3 was not. Although it concerns the applicability of the definition of "disclose" in ORS 135.805, it was not made part of that statute, nor was it made the subject of a "note" following the statute, as legislative counsel has done with similar limitations. *See, e.g.*, Oregon Laws 2019, ch 635, § 30, *compiled as a note after* ORS 163.095 (2019) (describing that statute's applicability); *State v. Wolfe*, 368 Or 38, 46-47, 486 P3d 748 (2021) (discussing the applicability provision of ORS 163.095); *see also O'Mara v. Douglas County*, 318 Or 72, 76 n 1, 862 P3d 499 (1993) ("That section of enacted law (Or Laws 1989, ch 861, § 5) is not codified in Oregon Revised Statutes but is acknowledged by the 'note' following ORS 215.303.").

we resolve by examining the text and context of the provision, as well as any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We begin by looking to the text, which "is the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993).

In section 3, the word "offenses" is modified by the phrase "alleged to have occurred on or after the effective date of [this Act]." That phrase refers to how an offense is "alleged," that is, how it is charged. Thus, the phrase indicates that whether SB 751's amendments apply to an offense depends on how the offense is described in the charging instrument; if the offense is described as having occurred on a date that is the same or later than SB 751's effective date, then the amendments apply.

That straightforward reading of section 3 is consistent with how the phrase "alleged to have occurred" is commonly used. As cases from both this court and the Court of Appeals illustrate, courts use the phrase when referring to a crime's alleged commission date, not its charging date. *See, e.g.*, *State v. Wimber*, 315 Or 103, 110 n 15, 843 P2d 424 (1992) ("[W]here the conduct constituting the offense is alleged to have taken place over a period of time, the indictment need not state the date of each instance of the conduct, but may state inclusive dates between which the conduct is alleged to have occurred." (Internal citation omitted.)); *see also State v. Ribas*, 374 Or 750, 772, 583 P3d 1019 (2026) ("The only remaining question is whether the state is allowed to *prove* a charge alleged to have occurred 'on or about' a certain date with evidence that the defendant committed the offense on a date other than the exact date specified." (Emphasis in original.)); *State v. Haynes*, 352 Or 321, 322, 284 P3d 473 (2012) ("Defendant is charged with committing a murder that is alleged to have occurred on the evening of May 6, 1994."); *State v. Johnson*, 311 Or App 111, 116, 489 P3d 1046 (2021) (the defendant "was charged with 11 counts of first-degree sexual abuse alleged to have occurred from about February 1 to April 1"); *State v. Fujimoto*, 266 Or App 353, 354-55, 338 P3d 180 (2014) ("Defendant was charged with nine counts of first-degree theft *** alleged to have

occurred in Washington County on or about September 23, with each count alleging theft from a different store.").

Moreover, to construe section 3 as relator does would require us to essentially delete some of its text, so that it would read as follows: The "amendments *** by sections 1 and 2 of this 2021 Act apply to offenses alleged ~~to have occurred~~ on or after the effective date of [the Act]." Doing so would be contrary to how we construe statutes because, as a general rule, we assume that "the legislature did not intend any portion of its enactments to be meaningless surplusage." *State v. Clemente-Perez*, 357 Or 745, 755, 359 P3d 232 (2015); *see also* ORS 174.010 (providing that the court's role in statutory interpretation "is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted").

Nevertheless, relator argues that we should hold that the relevant date is the charging date. Relator bases his argument in part on the word "alleged" in the phrase "alleged to have occurred." Relying on dictionary definitions, he asserts that the words "allege," "alleged," and "allegation" "relate to formal accusations contained in an accusatory instrument." In addition, based on statutes and case law, he asserts that both the legislature and this court use the words "allege" and "allegation" to refer to the contents of an accusatory instrument. Given the meaning of "allege" and its variations, he argues that

> "an offense 'alleged to have occurred' on or after SB 751's effective date refers to the date in which the formal allegation is made upon the filing [of] an accusatory instrument. Because the state never 'alleged' relator committed any offense until after SB 751's effective date, the current definition of 'disclose' in ORS 135.805(2) controls."

We agree with relator that "allege" and its variations are often used to refer to the contents of a charging instrument. But that fact supports the straightforward reading of section 3 described above, in which the word "alleged" is used to refer to an allegation in the charging instrument, specifically, the alleged crime commission date.

In addition to his argument based on the word "alleged," relator makes an argument based on other applicability provisions. He asserts that the legislature routinely makes changes to sentencing statutes applicable to offenses "*committed* on or after" the effective date of an act, and he contends that the fact that section 3 applies to offenses "*alleged* to have occurred on or after" SB 751's effective date indicates that the legislature did not intend the applicability of SB 751's amendments to depend on the date the offenses were *committed*, but rather on when they were *alleged*. (Emphases added.) As we understand it, relator's argument is that, if the legislature had wanted to limit the applicability of SB 751's amendments to offenses occurring on or after the bill's effective date, it would have provided that the amendments apply to offenses "committed on or after" that date, as it has done for amendments to sentencing statutes.

We do not draw the same conclusion from the sentencing statutes' applicability provisions as relator does. Instead, we conclude that the likely reason the legislature used the phrase "alleged to have occurred" in section 3 is because SB 751 concerns discovery, most of which occurs before or during trial and, therefore, before a determination is made regarding whether an offense has been committed. In that context, referring to offenses "alleged to have occurred," as opposed to "committed," is appropriate.

As for legislative history, the parties have not provided, and we have not located, any legislative history regarding section 3. The legislative history of SB 751 does not appear to contain any explanation, comments, or questions about section 3.

Relator argues that, when construing section 3, we should look to the legislative history regarding the substantive changes sections 1 and 2 made to the discovery statutes. He asserts that those changes—which amended the definition of "disclose" and expanded the state's discovery obligations—were intended to improve the consistency and efficiency of discovery practices. *Citing* Video Recording, Senate Committee on Judiciary, SB 751, March 24, 2021, 1:11:30-1:35:00 (statements from representatives of the Innocence Project, the Forensic Justice Project, Metropolitan

Public Defenders, and Oregon Criminal Defense Lawyers Association). Given those objectives, relator argues that SB 751's amendments should apply to all cases initiated on or after the bill's effective date.

We understand relator's point; having a single set of discovery statutes apply to all crimes would improve consistency and efficiency. But, as discussed above, a straightforward reading of the text of section 3 indicates that the legislature chose to make SB 751's amendments applicable only to crimes whose alleged crime commission date is on or after the bill's effective date. The legislature had to make a choice about the applicability of the amendments and, as it often does, it based that choice on the crime's alleged commission date, as opposed to its charging date.[4]

Relator also points out that, if SB 751's amendments do not apply to all crimes charged on or after the bill's effective date, then different versions of the discovery statutes will apply to different crimes depending on their alleged commission dates. That is true, but that is not an uncommon result when the legislature amends criminal statutes. Moreover, the number of cases that involve the prior versions of the statutes will decrease over time. Thus, the fact that different versions of the discovery statutes will apply to different alleged crimes does not dissuade us from reading the text of section 3 in the straightforward way described above, which gives effect to all the terms that the legislature chose to use.

In sum, based on the text of section 3, we conclude that SB 751's amendments to the discovery statutes apply to offenses with alleged crime commission dates on or after the bill's effective date, January 1, 2022. Because the alleged crime commission dates in relator's indictment all predate that date, the amendments do not apply to relator's criminal case. That means that the amended definition of

---

[4] One reason that the legislature often provides that amendments to criminal statutes apply to crimes committed on or after the amendments' effective dates is because applying certain amendments (such as those that change the elements of a crime or increase penalties) to crimes committed before those dates violates the constitutional prohibitions against *ex post facto* laws. Or Const, Art I, § 21; US Const, Art I, § 9; *State v. Gallant*, 307 Or 152, 155, 764 P2d 920 (1988) ("Generally speaking, *ex post facto* laws punish acts that were legal at the time they occurred, change the punishment for those acts, or deprive the defendant of a defense for those acts." (Internal citations omitted.)).

"disclose"—which requires parties to provide "a copy" of discovery materials—does not apply in relator's case. Instead, the prior definition does, and it requires only that parties provide "an opportunity to inspect or copy" the material. ORS 135.805(2) (2019).

In this mandamus case, relator's primary argument is based on the current version of ORS 135.805(2), but, because that version does not apply to his case, we decline to exercise our discretion to determine whether the state may charge for copies of discovery materials and, if so, whether it may withhold them pending payment.

The alternative writ of mandamus is dismissed.